In the Matter of HAROLD EPSTEIN, as Coexecutor of LAMBERTUS R. P. SCHOONHEIM, Deceased. DOIREANN M. SCHOONHEIM et al., Appellants-Respondents; SYLVIA M. SCHOONHEIM et al., Respondents-Appellants; VINCENT J. CATALFO as former Guardian ad Litem of RYK M. SCHOONHEIM et al., Respondents.

First Department, June 28, 1990

**APPEARANCES OF COUNSEL**

*Leslie D. Corwin* of counsel *(Fred H. Perkins* with him on the brief; *Morrison Cohen Singer & Weinstein,* attorneys), for respondent-appellant Harold Epstein and respondent *pro se.*

*Norman A. Senior* of counsel *(Daniel Eisenberg* with him on the brief; *Greenfield Eisenberg Stein & Senior,* attorneys), for appellants-respondents Doireann Marie Schoonheim and Ryk Michael Schoonheim, and respondent *pro se.*

*R. Demarest Duckworth III* of counsel *(L. Ashley Robinson* with him on the brief; *McKenzie, Meaders & Ives,* attorneys), for Sylvia Margot Schoonheim, respondent-appellant.

*Ronald B. Goodman* of counsel *(Epstein, Reiss & Goodman,* attorneys), respondent *pro se.*

*Emilio Nunez* for Vincent J. Catalfo and another, respondents.

*Jonah D. Zimiles* of counsel *(John C. Sparkman* with him on the brief; *Carter, Ledyard & Milburn),* respondent *pro se.*

### OPINION OF THE COURT

Per Curiam.

Decedent, whose will was admitted to probate in New York County on March 23, 1984, left a gross estate valued in excess of $9,000,000. Aside from $250,000 of specific bequests, one third of the estate was left to the surviving spouse, Sylvia Schoonheim, who was appointed coexecutor and cotrustee, with the residuary estate bequeathed equally in trust to the decedent's two children from a prior marriage, Ryk and Doireann Schoonheim. The other coexecutor appointed under the decedent's will was Harold Epstein, who was associated first with the firm of Epstein, Reiss & Goodman, and, after the firm dissolved, with the firm of Morrison Cohen Singer & Weinstein. Additionally, the Surrogate appointed two guardians ad litem for Ryk Schoonheim.

As a result of the settlement of three proceedings commenced in the Surrogate's Court to remove Sylvia Schoonheim as coexecutor and cotrustee, for discovery of assets, and for an interim accounting, Sylvia Schoonheim agreed to resign as executor and trustee, to accept $100,000 in full satisfaction of all commissions, and to charge against her distributive share $814,000 representing improper transfers made by her from the estate to her personal accounts.

In the order appealed from, attorneys' fees and disbursements to Mr. Epstein and his firms, the guardians ad litem, and other attorneys representing the various respondents were approved in the total amount of $1,359,384.93. It should

be emphasized that these are *interim* awards, unaccompanied even by a finally settled interim accounting. After six years of administration, a winding up of the estate and a final accounting is nowhere in sight. With the estate in this posture, we find these fee awards excessive and impermissible to the extent indicated below.

By its order, the Surrogate's Court awarded or confirmed the following interim fees and disbursements:

| Law Firm or Guardian | Fee | Disbursements |
|---|---|---|
| Epstein Reiss & Goodman<br>    Former Attorneys for<br>    Harold Epstein<br>    (the Epstein firm) | $476,000 | $24,603.22 |
| Morrison Cohen Singer & Weinstein<br>    Attorneys for Harold Epstein<br>    (the Morrison firm) | 247,500 | 3,411.14 |
| McKenzie Meaders & Ives<br>    Attorneys for Sylvia Schoonheim | 48,698 | 1,908.22 |
| Carter Ledyard & Milburn<br>    Former Attorneys for Sylvia<br>    Schoonheim | 22,150 | 1,686.10 |
| Vincent J. Catalfo, Esq.<br>    Former Guardian Ad Litem for<br>    Ryk Michael Schoonheim | 150,000 | -0- |
| Ronald E. Stringer, Esq.<br>    Former Guardian Ad Litem for<br>    Ryk Michael Schoonheim | 150,000 | -0- |
| Greenfield Eisenberg Stein & Senior<br>    Attorneys for Doireann Marie Schoonheim<br>    and Ryk Michael Schoonheim | 20,000 | 428.25 |
| Total | $1,094,348 | $32,036.93 |

In addition to the above fees the estate has paid the following legal and accounting fees and disbursements:

| | | |
|---|---|---|
| De Brauw and Westbroek<br>    Dutch counsel | $140,000 | |
| Friedman, Alpren & Green<br>    Accountants | $ 93,000 | |
| Grand Total | | $1,359,384.93 |

■ *The Epstein Firm Award:* Although the Surrogate's Court gave recognition in its decision to the principle that executorial services were not to be billed as legal services (citing *Matter of Hallock,* 214 App Div 323), this salutary rule was not applied with appropriate rigor when interim fees of $451,000 were disbursed to the Epstein firm for services it rendered from decedent's death to September 1, 1986. It appears that for this 2-year-and-9-month period, Mr. Epstein

took the position that he performed no executorial services, and that whatever work he did do was billable as legal work, even though he included in his legal billing such items as attending the appraisal of the contents of decedent's apartment, traveling to and from and spending time in Holland for 9, 15-hour days (here there was even double billing on this travel expense since the estate was charged for the cost of another Epstein firm partner who accompanied Mr. Epstein, even though highly paid Dutch counsel were hired and in place), meeting or conferencing with his coexecutrix, meetings with an investment counselor, partners in a real estate venture, bank personnel and an insurance agent, and reviewing bank statements and transferring funds.

In his initial application for legal fees, Mr. Epstein claimed that he worked 783.8 hours. The burden was entirely upon him to differentiate between his executorial and legal services; yet, despite an invitation from the Surrogate's Court to do so, he never submitted a breakdown between the two. Under the circumstances, we find, on a conservative basis, that at least some 200 hours of this time, billed at the Epstein firm's rate of $250 an hour, were executorial, and thus compensable from the approximate sum of $225,000 which he has or will receive as commissions (SCPA 2307). For this reason, the initial fee award was excessive by $50,000.

Another impropriety was the failure to deduct from the legal fees charged by the Epstein firm the $93,000 it paid to the accounting firm of Friedman, Alpren & Green for having prepared the estate tax and other fiduciary returns. Preparation of the Federal estate tax return and fiduciary returns " 'are the function of the attorney for the executor so that money paid to an accountant under such circumstances is ordinarily deductible from the attorney's fee to avoid duplication' ". *(Estate of Bloch,* NYLJ, May 20, 1987, at 15, col 6, at 29, col 1 [quoting *Matter of Jones,* NYLJ, Apr. 30, 1981, at 12, col 6]; *see also, Estate of Daly,* NYLJ, Dec. 4, 1986, at 15, col 4 [holding preparation of fiduciary returns are the responsibility of counsel]; *In re Kramer's Will,* 70 NYS2d 239, 245-246.) No unusual circumstances have been shown to justify the retention of Friedman, Alpren & Green, the accountants hired by Mr. Epstein, and the payment to them by the estate of this $93,000. Under the prevailing rule, the Epstein firm should have absorbed this accountant's fee.

■ Although it appears that the initial fee paid to the Epstein firm was approved by the oral stipulation of counsel

in open court on September 10, 1986, this circumstance does not place the fee arrangement beyond this court's power to review and correct. The acquiescence of Martina Gilbert Schoonheim, the mother of decedent's children, noted on the record, does not estop these parties from objecting as they do now, given a record that does not support a finding that, Martina, the first Mrs. Schoonheim, made a knowing and intelligent waiver with respect to the size of any fee sought. Her focus was entirely on the recovery to be obtained from Sylvia, the second Mrs. Schoonheim. Nor are the children to be penalized by the inexplicable poststipulation silence of their "guardians" who never raised the slightest objection to any fee, charge, or disbursement claim. For the foregoing reasons, we vacate that portion of the order as directed payment of an additional $25,000 interim fee to the Epstein firm.

Because the Epstein firm has been dissolved, it should be Mr. Epstein's responsibility to return any excess fee paid to that defunct firm, we accordingly direct that he immediately return the executor's commissions already paid to him by the estate (in the approximate amount of $80,000), and that the $50,000 in excess legal fees and the $93,000 in accountant's fees be a surcharge on any executor's commissions ultimately payable to him on the final accounting.

We also direct that in the next accounting proceeding, whether interim or final, Mr. Epstein justify his payment to Dutch counsel of the sum of $140,000, and to explain what benefit, if any, inured to the estate in consideration of such fee. To the extent that such disbursement is not justified, it should also result in an additional surcharge upon any executor's commissions due Mr. Epstein.

*The Morrison Firm:* We reject the self-serving apportionment Mr. Epstein makes between his legal (342 hours) and executorial (47 hours) services while associated with this firm. Of the 389 billed hours set forth in his application, we find that approximately additional 50 hours should be attributed to his executorial duties, so that, at the $300 an hour rate claimed, this fee is excessive in the amount of $15,000.

*The Two Guardian Ad Litem Fees:* By order of the Surrogate's Court dated April 8, 1987, Ronald E. Stringer was appointed guardian ad litem for Ryk Schoonheim, then aged 17, in the intermediate account and removal proceedings pertaining to Sylvia Schoonheim, and by order of the next

day, Vincent J. Catalfo was appointed guardian ad litem for Ryk in the discovery proceeding. There was no statutory requirement for a separate guardian in the discovery proceeding, which was simply a procedural step towards the ultimate removal remedy sought, and there was therefore no necessity for a dual appointment in these closely related, if not overlapping, matters. As Mr. Catalfo himself puts it, "it became clear that the issues in all the proceedings were interlocked." This is manifest from the reference in the fee applications of both guardians to conferences had between them for which they proposed to charge the estate. To avoid this obvious duplication, the outcome of the first conference should have been to advise the court that the services of both were superfluous, and that only one should continue.

In their fee applications, Mr. Catalfo sought a fee of $212,-800 for an alleged time expenditure of 1,064 hours, and Mr. Stringer sought a fee of $200,000 for an alleged time expenditure "in excess of 1,000 hours." The Surrogate's Court awarded them each a fee of $150,000. However, neither guardian supported his fee claim with a single contemporaneous time record or a single estimate of time expenditure for any particular item of work. When asked for such substantiation, Mr. Catalfo simply ignored the request, and Mr. Stringer stated in a reply affidavit that he "urged the Court to consider that this request for minutiae has not been made a requirement of the Court". We conclude that payment of these fees in any amount would represent a total waste of estate assets, and the services allegedly rendered produced no discernible benefit whatever to the estate. Each guardian, if he be so advised, shall be permitted to submit a revised application for out-of-pocket disbursements actually incurred. Under the circumstances disclosed by this record, they are entitled to no more.

■ *Vincent J. Catalfo, Esq.:* Under the order appointing him, his mandate was to represent his ward in the discovery proceedings only. To the extent that he claims in his affidavit of services that on over 100 separate occasions he "received, reviewed and analyzed" all kinds of estate correspondence and papers, his work in this respect was simply gratuitous. It is undisputed that he attended the four deposition sessions of the former coexecutrix Sylvia Schoonheim, commencing on June 17, 1987, but his activity there was simply duplicative of the more pointed labor of others.

The one thing he might have been legitimately expected to

do on behalf of his ward was to object to the $100,000 in executor's commissions allotted to Sylvia Schoonheim as part of the settlement when she was obliged to restore $814,000 wrongfully taken from the estate. The distinct possibility that a guardian's approval of the settlement arrangement might be required was expressly noted in open court by the Surrogate on the record. That he failed to assert his ward's objection after his appointment was a clear breach of his duty as guardian, and reveals a startling lack of appreciation for the adversarial obligations of his appointment. His silence in the face of this settlement with an errant fiduciary confirmed the wrong message for the future administration of this estate: it was a clear signal that the acts of the wolf were to be rewarded from the wages of the shepherd. Although the issue is not directly before us, we would note that there is nothing to foreclose Ryk from objecting to Sylvia's commissions, and from contending that they should constitute a charge against the legacy ultimately paid to her. As for the failure of his guardian, Mr. Catalfo, to object to those commissions or question, much less object to, the excessive legal fees awarded to Mr. Epstein's firms, this also is not to be overlooked, or ratified, by even a nominal fee award. The same conclusion must be reached as to his colleague, Mr. Stringer.

We are mindful, of course, that the $100,000 executorial fee to Sylvia Schoonheim functioned as an inducement for her to settle the claim against her, and that one third of this amount would be payable to her in any event as a legacy. There was an estate tax advantage to be had in the deductibility of the disbursement as executor's commissions from the gross estate. However, the liability of the executrix was crystal clear and the need for the $100,000 "sweetener" was far from clear. The pertinent point here is not what the ultimate disposition of the court might be, but the duty of Mr. Catalfo to resist the clear damage to his ward, a duty that was met by default.

■ *Ronald E. Stringer, Esq.:* Mr. Stringer also failed in the performance of his fiduciary duty. His appointment was to represent the interests of his ward on the interim account, which is still, as of this date, incomplete. At the very least, the court was entitled to receive from him a guardian's report analyzing, from his ward's point of view, the requests for legal fees and disbursements. Like Mr. Catalfo, he never drafted a single page of any legal document except for his fee application. The great deference that the executor, Mr. Epstein, gives to the two guardians' fee applications, and the reciprocal

passivity of the guardians in response to the legal fee that the latter requested, have had a most unfortunate impact on the proper management of this estate. The guardians appointed here gave too little heed to the fiduciary standard enunciated over 60 years ago by Chief Judge Cardozo: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *(Meinhard v Salmon,* 249 NY 458, 464.) Here, even the healthy skepticism characteristic of the marketplace would have been helpful, but instead, it was abandoned.

It follows that Mr. Stringer is not entitled to any compensation either, but should simply receive reimbursement for his expenses.

██ *The Remaining Legal Fees:* While with the benefit of hindsight it is possible to criticize some of this work, e.g., some $10,000 of legal fees on collection matters worth only $20,000 with no results as yet. However, some bright spots do appear. One of these, achieved by the Morrison firm, was a reduction of the Federal estate tax from an original deficiency assessed by IRS of over $1 million to a negotiated liability of only $254,155, although even here, it should be noted that the United States Tax Court petition filed by the Morrison firm did not rest upon any complex legal theory but was simply a challenge to the IRS valuation of several properties, an achievement for which the accountants, already mentioned, probably pulled the laboring oar. Nevertheless, there is a sufficient basis for upholding the sound discretion of the Surrogate in approving the balance of the interim fees awarded *(Matter of Freeman,* 34 NY2d 1, 9).

Accordingly, the order of the Surrogate's Court, New York County (Marie M. Lambert, S.), entered August 7, 1989, which awarded interim legal fees to the various law firms and guardians in these proceedings, should be modified, on the law, the facts and in the exercise of discretion, (1) to reduce the interim legal fee awarded to Epstein, Reiss & Goodman, Esqs. from $476,000 to $333,000; to require Harold Epstein, Esq., the executor, forthwith to return to the estate all advance commissions received by him, to surcharge all commissions ultimately payable to Mr. Epstein on the final accounting in the sum of $143,000; to direct Mr. Epstein to justify in

such final accounting the sum of $140,000 paid to De Brauw and Westbroek (Dutch counsel) and his alleged disbursement of $24,603.22; and to vacate the additional award of $25,000 to the Epstein firm; (2) to reduce the interim legal fee awarded to Morrison Cohen Singer & Weinstein, Esqs. from $247,500 to $232,500; and (3) to vacate the fee award of $150,000 each to Vincent J. Catalfo, Esq. and Ronald E. Stringer, Esq., with leave to each to submit an appropriate application for reimbursement of out-of-pocket expenses only; and, otherwise affirmed, with the costs of cross-appellant Sylvia Margot Schoonheim to be paid by cross-appellant Harold Epstein, and the costs of appellants Doireann Marie Schoonheim and Ryk Michael Schoonheim to be paid by respondents Vincent J. Catalfo and Ronald E. Stringer, jointly and severally.

Ross, J. P., Milonas, Kassal, ·Wallach and Rubin, JJ., concur.

Order, Surrogate's Court, New York County, entered on or about August 7, 1989, unanimously modified, on the law, the facts, and in the exercise of discretion, (1) to reduce the interim legal fee awarded to Epstein, Reiss & Goodman, Esqs. from $476,000 to $333,000; to require Harold Epstein, Esq., the executor, forthwith to return to the estate all advance commissions received by him, to surcharge all commissions ultimately payable to Mr. Epstein on the final accounting in the sum of $143,000; to direct Mr. Epstein to justify in such final accounting the sum of $140,000 paid to De Brauw and Westbroek (Dutch counsel) and his alleged disbursements of $24,603.22; and to vacate the additional award of $25,000 to the Epstein firm; (2) to reduce the interim legal fee awarded to Morrison Cohen Singer & Weinstein, Esqs. from $247,500, to $232,500; and (3) to vacate the fee award of $150,000 each to Vincent J. Catalfo, Esq., and Ronald E. Stringer, Esq. with leave to each to submit an appropriate application for reimbursement of out-of-pocket expenses only; and otherwise affirmed. Cross-appellant Sylvia Margot Schoonheim shall recover of cross-appellant Harold Epstein $250 costs and her disbursements of the appeal; appellants Doireann Marie Schoonheim and Ryk Michael Schoonheim shall each recover of respondents Vincent J. Catalfo and Ronald E. Stringer, respectively, $250 costs each and the disbursements of their appeals, jointly and severally.