OPINION OF THE COURT
H. Patrick Leis III, J.
Before the court, in this Mental Hygiene Law article 81 proceeding, is an unopposed application for attorneys’ fees and disbursements submitted on behalf of the Saint James Plaza Nursing Facility (Saint James).
By order to show cause, dated February 23, 1998, petitioner Robert Luby, Sr. by his attorneys, Nassau/Suffolk Law Services, commenced this proceeding for the appointment of a guardian for his father, William Luby. A hearing was held on March 20, 1998. William Luby, the alleged incapacitated person, was represented by the Mental Hygiene Legal Service. The respondent’s daughter, Mary Squillacioti, and Saint James, the nursing home where Mr. Luby resides, likewise, appeared by counsel.
By order and judgment, dated May 8, 1998, a special guardian was appointed for William Luby with the limited authority to: dispose of his property located at 21 Greenway Terrace, Lake Grove, New York; negotiate and/or litigate his nursing home bill; use the proceeds of the sale of the house to pay the nursing home expenses; and apply for Medicaid.
By the same order and judgment, the durable power of attorney, granted by William Luby on November 24, 1997 to Robert Baffa, administrator of Saint James, was vacated. A durable power of attorney and a health care proxy previously granted by William Luby to Mary Squillacioti were deemed valid and in full force and effect. In addition, the court evaluator and the court-appointed counsel to William Luby were awarded fees for services rendered in the guardianship proceeding.
The request for legal fees by Saint James was denied without prejudice and with leave to submit further papers on notice to all counsel who appeared. The court directed that upon renewal of its application for fees, Saint James must establish the authority for such request by a nonpetitioner and explain the facts and circumstances surrounding the power of attorney executed by William Luby on November 27, 1997 to Robert Baffa, the administrator of Saint James.
With regard to Saint James’ renewed application for an award of counsel fees, the court has considered: the original af *623 firmation of legal services of the attorneys of record for Saint James, dated April 17, 1998; a farther affirmation in support of application for an award of attorneys’ fees and disbursements, dated June 8, 1998; and the September 11, 1998 affirmation of William Luby’s special guardian.
The following facts submitted on this renewed application for counsel fees are undisputed. William Luby was admitted to Saint James on April 18, 1997 as a private pay patient, and he was billed on a monthly basis. In or about November of 1997, Mr. Luby had nearly depleted his personal funds and was substantially in arrears to Saint James. In order to remain at Saint James, it was necessary for Mr. Luby to apply for Medicaid, and in order for him to qualify as a Medicaid recipient, it was necessary that his home be sold. At that time, Mr. Luby’s home, located in Lake Grove, New York, was occupied by his son, Robert Luby, Sr., who paid no rent.
On or about November 24, 1997, William Luby designated Robert Baffa, the administrator of Saint James, as his attorney-in-fact for the limited purpose of handling real estate transactions claims and litigation. Robert Baffa prosecuted a summary eviction proceeding in the District Court of Suffolk County as attorney-in-fact for William Luby against his son, Robert Luby. Said proceeding resulted in a judgment of possession and warrant of eviction, dated February 18, 1998. Robert Baffa proceeded to market the property for sale.
Thereafter, Robert Luby, Sr. commenced the within guardianship proceeding. At the hearing held on March 20, 1998, William Luby was represented by court-appointed counsel. Saint James was represented by separate counsel. The court evaluator testified that on or about July 17, 1997, William Luby was diagnosed with dementia after having been examined by a physician in the nursing home. The court evaluator stated that William Luby’s designation of the nursing home administrator as his attorney-in-fact in November of 1997 took place subsequent to the nursing home physician’s diagnosis of dementia. Upon being informed that Mr. Baffa intended to renounce his authority under the power of attorney, the court evaluator took no position with regard to the validity of the power of attorney.
At the conclusion of the hearing, the court determined that the respondent was incapacitated within the meaning of Mental Hygiene Law § 81.15. The court vacated the power of attorney in favor of Mr. Baffa on the ground that he declined to continue to carry forth his duties as a fiduciary and on the *624 ground that Mr. Luby had executed the power of attorney subsequent to having been diagnosed with dementia by the nursing home’s own physician.
By this renewed application, Saint James seeks an order directing the special guardian to pay, out of the incapacitated person’s funds, $14,392.27 including disbursements for legal services performed from November 18, 1997 through March 31, 1998. The legal services included inter alia: the drafting and execution of a power of attorney in favor of Robert Baffa; the commencement, prosecution and enforcement of the landlord-tenant eviction proceeding against Robert Luby, Sr., the son of the incapacitated person; assisting the attorney-in-fact in marketing the incapacitated person’s real property; numerous intraoffice conferences; numerous conferences with Robert Baffa; and representation of Saint James in connection with the guardianship proceeding.
Article 5, title 15 of the General Obligations Law authorizes a principal to name an agent as his power of attorney including one that will survive should the principal become incapacitated (see, General Obligations Law §§ 5-1501, 5-1505). A power of attorney vests a fiduciary responsibility in an agent who then is duty-bound to execute the utmost good faith and to act in his principal’s best interests. (See, Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158 [1993].) Where one of the primary objectives in a nursing home administrator’s acceptance of a power of attorney from a resident is to protect the interests of the nursing home as a creditor, such objective is inconsistent with the duty of the attorney-in-fact to protect the interests of its principal (see, 1997 Atty Gen [Inf Opns] 1038).
Here, the purpose of designating Robert Baffa as William Luby’s agent and of the subsequent prosecution and enforcement of a summary eviction proceeding was to facilitate the sale of William Luby’s home in order to enable him to pay substantial arrears to Saint James and to ensure future payment for his continued care in the nursing home.[1] Indeed, on November 24, 1997, at the time of the execution of the power of attorney to Mr. Baffa, counsel to Saint James explained to Mr. Luby, a person previously diagnosed as having dementia, *625 that in order for him to continue to reside at Saint James, it would be necessary for him to sell his home.[2]
Since the reason for William Luby’s designation of the nursing home administrator as his attorney-in-fact was to ensure his continued ability to pay the costs of his care at Saint James and to enable him to ultimately qualify for Medicaid, the entity which derived the chief benefit from the exercise of such power of attorney was the creditor nursing home. The court has considered and finds unpersuasive the nursing home’s contention that Robert Baffa consented to act as attorney-in-fact for William Luby at the request of Mary Squillacioti, the incapacitated person’s daughter and attorney-in-fact after her refusal to commence eviction proceedings against her brother.
The circumstances surrounding the execution of the power of attorney, the prosecution of the eviction proceedings against Mr. Luby’s son, and the marketing of Mr. Luby’s home for sale created a conflict of interest on the part of the nursing home. Under these circumstances, it is concluded that the acceptance of the power of attorney by the nursing home administrator from a resident in its facility was inappropriate.
Rather than subject itself to a possible conflict of interest and the appearance of impropriety, the nursing home should have commenced a Mental Hygiene Law article 81 proceeding for the appointment of a special guardian for Mr. Luby. (See, Mental Hygiene Law § 81.06 [a]; Matter of Levin, 158 Misc 2d 522 [1993].)
The court is in a quandary as to “inexplicable silence” of Mr. Luby’s attorney, the court evaluator/special guardian and Mary Squillacioti, his daughter and attorney-in-fact with regard to Saint James’ request for legal fees (see, Matter of Schoonheim, 158 AD2d 183 [1st Dept 1990]). Nevertheless, the “court is obligated to award only reasonable and necessary fees commensurate with the benefits inuring to the guardianship estate” (Matter of Schwartz, Aug. 31, 1994, NYLJ, at 25, col 1).
It is determined that a nursing home is not entitled to an award of legal fees in connection with its acceptance and exercise of a power of attorney received from a resident previously diagnosed by its own physicians with dementia where one of the objectives of the power of attorney was to protect the nursing home’s interest as a creditor. Under the circumstances presented, the incapacitated person received little benefit, if *626 any, as a result of the appointment of the nursing home administrator as his attorney-in-fact. Moreover, the nursing home, whose primary objective should have been to secure the care and well-being of its patient, placed itself in an untenable position when it commenced eviction proceedings against the child of its resident.
In view of the foregoing, the court declines to direct that the incapacitated person bear any legal costs associated with the execution and exercise of the power of attorney given to the nursing home. The court, likewise, declines to award legal fees to the nursing home in connection with the guardianship proceeding wherein Mr. Luby, the alleged incapacitated person, was represented by separate court-appointed counsel. In addition, no statutory or case law has been cited which would support a legal fee award to a nursing home from an incapacitated person’s funds where the nursing home was not the petitioning party in the guardianship proceeding.
The special guardian is directed to reimburse Saint James in the amount of $100 for the cost of the ambulette which transported the incapacitated person to the hearing on March 20, 1998. All other disbursements requested were incurred in connection with the exercise of the power of attorney and are denied.

. Affirmation in further support of application for attorney’s fees, at 6.

. Exhibit A, affirmation in further support of application for an award of attorney’s fees.